**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| John Hilaire,<br><br>Plaintiff,<br><br>v.<br><br>Trans Union LLC,<br><br>Defendant. | Civil No. 3:26-cv-00521-VAB<br><br><br><br><br><br>September 1, 2026 |

**RECOMMENDED RULING ON MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* AND INITIAL REVIEW OF THE COMPLAINT**

The plaintiff, John Hilaire, inquired about several tradelines that appeared on his TransUnion credit report.[1] Dissatisfied with TransUnion's response, he asked the company to disclose its "method of verification," including the "procedures used to determine the accuracy and completeness of the disputed information."[2] He alleges that TransUnion "failed to provide the requested method," instead "issu[ing] non-responsive communications,"[3] and he asserts that "TransUnion's failure to provide the method of verification deprived [him] of the ability to evaluate the reasonableness and lawfulness of [the company's] reinvestigation."[4] He then initiated this seven-count lawsuit, six counts of which charge TransUnion with violating the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, and one of which charges violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*[5]

1 Complaint, Docket No. 1, at para. 13.
2 Complaint, Docket No. 1, at para. 20.
3 Complaint, Docket No. 1, at paras. 22-23.
4 Complaint, Docket No. 1, at para. 25.
5 *See generally* Complaint, Docket No. 1.

This lawsuit is but one of ten that Mr. Hilaire has filed in this court in the past ten months.[6] Ordinarily it costs $405.00 to start a civil lawsuit in federal court,[7] but plaintiffs may avoid these fees if they submit affidavits showing that they are "unable to pay."[8] In two of his ten cases, Mr. Hilaire paid the filing fee.[9] But in the other eight—including this one—he filed motions for leave to procced *in forma pauperis*, or "IFP," meaning that he asked to be excused from paying the fee.[10]

When a plaintiff requests leave to proceed IFP, the court ordinarily conducts two inquiries. First, it reviews the plaintiff's financial affidavit to determine whether he is unable to pay the fee.[11] Second, to ensure that the plaintiff is not abusing the privilege of filing a free lawsuit, the court reviews his complaint to determine whether, among other things, it "fails to state a claim on which relief may be granted."[12] If the complaint "fails to state a claim," the court must dismiss it.[13]

United States District Judge Victor A. Bolden referred Mr. Hilaire's case to me, United States Magistrate Judge Thomas O. Farrish, to conduct these inquiries.[14] I have thoroughly

---

6 The other nine cases are: *Hilaire v. Marinosci Law Group, P.C. et al.*, 3:25-cv-1904-VAB; *Hilaire v. Nationstar Mortgage LLC*, 3:26-cv-00015 (VAB); *Hilaire v. Nationstar Mortgage LLC et al.*, 3:26-cv-149 (VAB); *Hilaire v. Cohen, Burns, Hard & Paul, et al.*, 3:26-cv-462 (VAB); *Hilaire v. Equifax Information Services, LLC*, 3:26-cv-519 (VAB); *Hilaire v. Experian Information Solutions, Inc.*, 3:26-cv-520 (VAB); *Hilaire v. American Express National Bank*, 3:26-cv-650 (VAB); *Hilaire v. JPMorgan Chase Bank, N.A.*, 3:26-cv-670 (VAB); and *Hilaire v. Navy Federal Credit Union*, 3:26-cv-747 (VAB).

7 28 U.S.C. § 1914. The filing fee is $350.00 and the administrative fee is $55.00.

8 28 U.S.C. § 1915(a).

9 *Hilaire v. Marinosci Law Group, P.C.*, No. 3:25-cv-1904 (VAB); *Hilaire v. Nationstar Mortgage LLC*. No. 3:25-cv-149 (VAB).

10 *See Hilaire v. Nationstar Mortgage LLC*, 3:26-cv-15 (VAB); *Hilaire v. Cohen, Burns, Hard & Paul, et al.*, 3:26-cv-462 (VAB); *Hilaire v. Equifax Information Services, LLC*, 3:26-cv-519 (VAB); *Hilaire v. Experian Information Solutions, Inc.*, 3:26-cv-520 (VAB); *Hilaire v. American Express National Bank*, 3:26-cv-650 (VAB); *Hilaire v. JPMorgan Chase Bank, N.A.*, 3:26-cv-670 (VAB); and *Hilaire v. Navy Federal Credit Union*, 3:26-cv-747 (VAB).

11 28 U.S.C. § 1915(a).

12 28 U.S.C. § 1915(e)(2)(B).

13 28 U.S.C. § 1915(e)(2).

14 Order of Referral, Docket No. 10.

reviewed the complaint, the IFP motion, and the accompanying financial affidavit. For the reasons set forth in Section II below, I first recommend that the IFP motion be denied on the current record because Mr. Hilaire has not sufficiently demonstrated that he is unable to pay the filing fee.

In the second step of the analysis, I recommend that the complaint be dismissed for failure to state a claim. Mr. Hilaire asserts that TransUnion violated the FCRA, but he has not explained how or why the information in his credit report was inaccurate. And while he asserts that TransUnion violated CUTPA, he has not plausibly explained how he suffered an "ascertainable loss" from the alleged violation. To be sure, no plaintiff—least of all a *pro se* plaintiff like Mr. Hilaire—is required to plead *all* the facts available to him, just to get his complaint off the ground.[15] But "even a *pro se* plaintiff must plead a plausible claim."[16] As Judge Spector explained to him in another one of his cases,[17] and as I will explain again in Section III below, Mr. Hilaire's omissions render his complaint subject to dismissal for failure to state a claim. I further recommend, however, that the dismissal be without prejudice to an amended complaint.

---

15 *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations[.]").

16 *Reynolds-El v. Strackbein*, No. 3:25-cv-951 (KAD) (TOF), 2025 WL 3470483, at *4 (D. Conn. Dec. 3, 2025), *report and recommendation adopted*, slip op. (D. Conn. Jan. 6, 2026).

17 Recommended Ruling, Docket No. 12, *Hilaire v. Experian Information Solutions, Inc.*, No. 3:26-cv-520 (VAB) (RMS).

## I. BACKGROUND

The following factual allegations are taken from Mr. Hilaire's complaint,[18] and from the exhibits he supplied along with it.[19] On August 7, 2025, Mr. Hilaire obtained a "consumer report" from SmartCredit.com.[20] The report "reflected multiple tradelines being published by . . . TransUnion[,]" "includ[ing] . . . American Express, Apple Card/Goldman Sachs Bank USA, Navy Federal Credit Union, Nationstar Mortgage, and First Tech Federal Credit Union."[21]

On December 13, 2025, Mr. Hilaire submitted a dispute through TransUnion's online dispute system.[22] In his complaint in this case, he says that his "dispute . . . challenged the accuracy" of his credit report,[23] but the actual dispute communication did not explain how any of the information in the report was factually incorrect or misleading.[24] Instead, Mr. Hilaire alleged that his creditors never notified him of his "Opt Out" and other rights under the Graham-Leach-Bliley Act, 15 U.S.C. §§ 6801-03 ("GLBA"); that, because they never provided him with notice, all their "transmissions of data . . . to Transunion . . . were unlawful[;]" and that all such accounts were therefore "[u]nlawfully furnished" and "[u]nverifiable as a matter of law."[25] He also asserted that the Right to Financial Privacy Act, 12 U.S.C. §§ 3402-03 ("RFPA"), "prohibits disclosure of

---

18 Mr. Hilaire's well-pleaded factual allegations—in other words, the allegations that are not merely conclusory—are assumed to be true for purposes of this review. *Staton v. Holzbach*, No. 3:20-cv-631 (SRU), 2020 WL 6119382, at *1 n.4 (D. Conn Oct. 16, 2020). If Mr. Hilaire's case were to pass initial review, he would of course bear the burden to prove his factual claims at a later stage. *See, e.g., Ortiz v. Brown*, No. 3:25-cv-1495 (OAW) (TOF), 2026 WL 2322825, at *1 n.5 (D. Conn. Aug. 11, 2026). He should not infer, from the fact that the Court is assuming the truth of his well-pleaded factual allegations at this initial stage, that he has been relieved of his burden of proving those facts if any later stages are reached.

19 Exhibits, Docket No. 1-1.

20 Complaint, Docket No. 1, at para. 11.

21 Complaint, Docket No. 1, at paras. 11-12.

22 Complaint, Docket No. 1, at para. 14.

23 Complaint, Docket No. 1, at para. 15.

24 Exhibit A to Complaint, Docket No. 1-1, at pp. 3-6.

25 Exhibit A to Complaint, Docket No. 1-1, at pp. 3-4.

financial records unless: the customer expressly authorizes it, or a statutory basis exists[,]" and because he also claimed to have "never authorized any of the . . . furnishers . . . to transmit any of [his] records to Transunion[,]" he alleged that his credit report entries "violate[d] RFPA and must be withdrawn."[26] Mr. Hilaire then reasoned that, because his creditors had not met the legal "GLBA and RFPA prerequisites" for filing reports with TransUnion, "the reporting is inaccurate, the information is unverifiable, no permissible purpose exists, and TransUnion is in ongoing violation of the FCRA."[27]

This case arises from Mr. Hilaire's dissatisfaction with TransUnion's response to this communication. Mr. Hilaire says that the company merely "issued a determination that the disputed tradelines were 'verified' and would remain on [his] credit file."[28] It did not supply him with "documentation, explanation, or procedures demonstrating how the disputed information was verified."[29] Dissatisfied, he then "submitted a request for the method of verification, seeking disclosure of the procedures used to determine the accuracy and completeness of the disputed information[,]" including "identification of the [credit] furnishers contacted, the procedures used, and the documentation relied upon in connection with Trans Union's verification."[30] TransUnion answered with "non-responsive communications, including statements that the accounts were 'previously verified,' without providing any description of the procedures used to verify the disputed information[,]"[31] and it summarily closed its complaint file on January 21, 2026.[32]

---

26 Exhibit A to Complaint, Docket No. 1-1, at p. 4.
27 Exhibit A to Complaint, Docket No. 1-1, at p. 4.
28 Complaint, Docket No. 1, at para. 18.
29 Complaint, Docket No. 1, at para. 19.
30 Complaint, Docket No. 1, at paras. 20-21.
31 Complaint, Docket No. 1, at para. 23.
32 Complaint, Docket No. 1, at para. 26.

This lawsuit followed less than three months later. In it, Mr. Hilaire asserts seven claims for relief. First, he alleges that TransUnion violated 15 U.S.C. § 1681i(a)(1)(A) when, among other things, it "failed to meaningfully evaluate [his] dispute and failed to address the substance of [his] challenges regarding lawful reporting and verification."[33] Second, he charges TransUnion with violating 15 U.S.C. § 1681i(a)(4) when it "fail[ed] to consider [his] submitted information[,]" "result[ing] in the continued reporting of disputed tradelines without proper evaluation or verification."[34] Third, he says that TransUnion violated 15 U.S.C. § 1681i(a)(5) when it failed to "produce documentation, identify verification procedures, or otherwise show that the disputed tradelines were verifiable under the FCRA," and by continuing to report "information that could not be verified."[35] Fourth, he alleges that TransUnion violated 15 U.S.C. § 1681i(a)(6)(B)(ii) when it "failed and refused to provide the method of verification."[36] Fifth, he claims that TransUnion violated 15 U.S.C. § 1681e(b) when it "reported and continued to publish the disputed tradelines without maintaining or producing procedures capable of verifying the accuracy and completeness of the information."[37] Sixth, he alleges that the company violated 15 U.S.C. § 1681b when it failed to demonstrate, upon his request, that it was using his credit information for a permissible purpose.[38] Seventh and finally, Mr. Hilaire states that TransUnion violated CUTPA when it "[m]ischaracteriz[ed his] lawful request for verification procedures as a duplicate or insufficient dispute in order to avoid providing required information," in addition to other alleged wrongs.[39]

---

33 Complaint, Docket No. 1, at paras. 31-38.
34 Complaint, Docket No. 1, at paras. 39-47.
35 Complaint, Docket No. 1, at paras. 48-57.
36 Complaint, Docket No. 1, at paras. 58-67.
37 Complaint, Docket No. 1, at paras. 68-76.
38 Complaint, Docket No. 1, at paras. 77-86.
39 Complaint, Docket No. 1, at paras. 87-97.

At the end of each count, Mr. Hilaire closed with the same allegations of harm. He wrote that, "[a]s a direct and proximate result of the Defendant's violations, Plaintiff has suffered injury in fact, including damage to credit reputation and creditworthiness, denial of credit, increased cost of credit, including higher down payment requirements for automobile financing, and other economic and non-economic harm."[40]

Contemporaneously with his complaint, Mr. Hilaire moved for leave to proceed IFP.[41] Judge Bolden then referred the case to me for a ruling on the IFP application and an initial review of the complaint under 28 U.S.C. § 1915.[42] I have carefully considered both the application and the complaint. In Section II below, I will explain why I believe Mr. Hilaire has not yet proven an entitlement to IFP status. And in Section III, I will explain why his complaint should be dismissed without prejudice to repleading.

## II. *In Forma Pauperis* Application

This is not the first IFP motion that I have reviewed from Mr. Hilaire. Judge Bolden referred an earlier case, *Hilaire v. Cohen, Burns, Hard & Paul, LLC* ("*Cohen*"), to me for review of the IFP motion and initial review of the complaint under Section 1915.[43] I then issued a recommended ruling, explaining why the IFP motion should not be granted on the record that was before me in that case.[44] Because the IFP application in this case is virtually identical to the

---

40 Complaint, Docket No. 1, at paras. 38, 47, 57, 67, 76, 86, 97; *see also* footnote 95 of this recommended ruling.

41 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2.

42 Order of Referral, Docket No. 10.

43 Order of Referral, Docket No. 9, *Hilaire v. Cohen, Burns, Hard & Paul, LLC*, No. 3:26-cv-462 (VAB).

44 Recommended Ruling, Docket No. 12, *Hilaire v. Cohen, Burns, Hard & Paul, LLC*, No. 3:26-cv-462 (VAB) (TOF).

application in *Cohen*,[45] the same reasoning applies here. I will therefore incorporate the discussion from my recommended ruling in *Cohen*, making only minor changes to reflect the few differences in the affidavits.

As I explained to Mr. Hilaire in *Cohen*, when a plaintiff files a complaint in federal court, typically he must pay filing and administrative fees totaling $405.00.[46] District courts may nevertheless authorize commencement of an action "without prepayment of fees . . . by a person who submits an affidavit that includes a statement . . . that the person is unable to pay such fees."[47] When a court allows a plaintiff to proceed this way, he is said to be proceeding "*in forma pauperis*," which is a Latin phrase meaning "in the manner of a pauper" or poor person.[48]

To qualify as "unable to pay," the plaintiff does not have to demonstrate absolute destitution, but he does need to show that "paying such fees would constitute a serious hardship."[49] The United States Supreme Court has said that a plaintiff makes a "sufficient" showing of inability to pay when his application demonstrates that he "cannot because of his poverty pay or give

---

45 *Compare* Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, *Hilaire v. Cohen, Burns, Hard & Paul, LLC*, No. 3:26-cv-462 (VAB), *with* Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2. The only differences are (1) some entries that are handwritten in the earlier case, are typewritten in this case; (2) whereas he claimed that Nerland Calixte contributed $520.00 to his household expenses in the earlier case, in this case he says the contribution is only $270.00; and (3) his list of prior cases filed is of course longer in the later case.

46 28 U.S.C. § 1914. As noted in the introduction, the filing fee is $350.00 and the administrative fee is $55.00.

47 28 U.S.C. § 1915(a)(1); *see also Coleman v. Tollefson,* 575 U.S. 532, 534 (2015) (stating that plaintiffs who qualify for IFP status "may commence a civil action without prepaying fees or paying certain expenses").

48 *Anderson v. Davis*, No. 3:26-cv-400 (SVN) (TOF), 2026 WL 2268253, at *2 n.23 (D. Conn. Aug. 6, 2026) (quoting Black's Law Dictionary (8th ed.) at p. 794), *report and recommendation adopted*, slip op. (D. Conn. Aug. 24, 2026).

49 *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007); *see also Potnick v. Eastern State Hospital*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam) (stating that "no party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life").

security for the costs and still be able to provide himself and his dependents with the necessities of life."[50]

In this case, Mr. Hilaire filed an application on the standard District of Connecticut form, but his answers to the form's questions are rife with cagy qualifications that leave the reader unsure of his true financial picture.[51] Take, for example, his answers to the questions in Sections A and B—the questions about his income and assets. When asked to state his income, he said only that his "[l]ast *non-employee* compensation was for $650 on 1/27/2026,"[52] leaving the reader to wonder whether other forms of income have been omitted. When asked whether he owned any real property, he said only that he did "not own any *income producing* real property."[53] And when asked to identify his assets, he says that he "maintains no funds *in a bank account*," but he does not say whether he has other types of accounts, *e.g.*, brokerage, cryptocurrency, *etc*.[54]

The lack of clarity continues in Section C, the section in which Mr. Hilaire was asked about his monthly obligations. He claims to spend $1,200.00 each month on rent, and to have no mortgage, leading the reader to believe that he is a renter rather than a homeowner.[55] But he then says that he has dispute over an alleged $120,000.00 debt to U.S. Bank Trust,[56] and in a two-page attachment to his form application, he adds that he "lives in the property that is the subject to a pending federal dispute"—all of which suggests he *was* a homeowner at the time of his application,

---

50 *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).
51 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2.
52 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2 , at p. 3 (emphasis added).
53 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 4 (emphasis added).
54 Attachment to Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 1.
55 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 5.
56 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 5.

just one who was not then paying his mortgage.[57] He then says that his utility bills "are currently subject to medical protection status,"[58] and he evidently wants the reader to believe that this fact suggests indigency; but "medical protection status" is determined with respect to medical rather than financial criteria, and accordingly this claim says little if anything about his ability to pay the filing fee.[59] He discloses that someone named Nerland Calixte contributes $270.00 to his $1,575.00 in monthly expenses, but he says nothing about this person's resources or ability to pay the filing fee.[60] Mr. Hilaire then closes out Section C with yet another carefully-qualified response: when asked to "[p]rovide any other information that will help explain why [he] cannot pay the cost of these proceedings," he responded that he "currently has no *employment* income."[61]

As noted in the introduction, Mr. Hilaire has filed ten federal cases in the last ten months, and his filings in other cases shed light on these qualifications. In *Hilaire v. Nationstar Mortgage LLC*, Mr. Hilaire explained that he does not believe himself to be a "person," because a federal appellate court allegedly held that "[a] 'person' is 'a variety of entities other than human beings.'"[62] Citing 1 U.S.C. § 1, he contended that *only* "corporations, companies, firms,

---

57 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 7. As will be shown in footnote 66 below, Mr. Hilaire's trust did indeed own the home in which he lived as of the date of his application.

58 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 7.

59 *See* United Illuminating, *Medical Protection*, available at www.uinet.com/account/waystopay/help-with-bill/medical%20protection [https://perma.cc/F2WS-EKRS] (last visited August 25, 2026) (explaining that eligibility for "medical protection" is determined with reference to medical, rather than financial, criteria).

60 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 3. Interestingly, just eleven days before, he stated in *Cohen* that Nerland Calixte contributed almost double that amount. Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 3, *Hilaire v. Cohen, Burns, Hard and Paul, LLC*, No. 3:26-cv-462 (VAB).

61 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 6 (emphasis added).

62 Affidavit of Non-Income Status and Notice to the Clerk of Free Access to the Courts, Docket No. 2, at p. 6, *Hilaire v. Nationstar Mortgage LLC,* No. 3:26-cv-15 (VAB) (D. Conn.). Mr. Hilaire cited "*Church of Scientology v. U.S. Department of Justice*, 612 F.2d 417 (1979)" for this proposition, but he has misleadingly edited his quote from the case. The full sentence reads:

partnerships, and associations" qualify as "persons" under the law, and that flesh-and-blood human beings evidently do not.[63] He then reasoned that, because Black's Law Dictionary uses the word "person" in the course of defining the word "employee," a non-person like him cannot have an "employer" or "wages," even though he concedes that he "exchange[s his] labor . . . for compensation."[64] He then bootstrapped these implausible theories into a conclusion that he is "not receiving 'income' within the meaning of the Internal Revenue Code."[65] In other words, Mr. Hilaire's *Nationstar* filing provides ample reason to believe that his statements about his income in *this* case are not genuine statements about his earnings, but rather prevarications arising from meritless "tax protester" beliefs.

There are other reasons to question whether Mr. Hilaire has been completely candid about his financial picture. To begin with, at the time he filed his motion, his trust was the record owner of the house in which he lived, yet he did not disclose it. The Bridgeport assessor's office appraised the value of the home at $301,896.00.[66] Moreover, he claimed to be essentially penniless in the

---

"The word 'person' in legal terminology is perceived as a general word which normally *includes* in its scope a variety of entities other than human beings." *Church of Scientology of California v. U.S. Department of Justice*, 612 F.2d 417, 425 (9th Cir. 1979) (emphasis added). In the context of that case, the term "person" clearly encompassed *both* flesh-and-blood human beings as well as other legal "entities."

[63] Affidavit of Non-Income Status and Notice to the Clerk of Free Access to the Courts, Docket No. 2, at p. 6, *Hilaire v. Nationstar Mortgage LLC,* No. 3:26-cv-15 (VAB) (D. Conn.) (citing 1 U.S.C. § 1). This is, of course, another mistaken citation. 1 U.S.C. § 1 provides that, "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' *include* corporations, companies," *etc.* The statute does not say that the term "person" is *limited to* corporations and other juridical persons.

[64] Affidavit of Non-Income Status and Notice to the Clerk of Free Access to the Courts, Docket No. 2, at p. 6, *Hilaire v. Nationstar Mortgage LLC,* No. 3:26-cv-15 (VAB) (D. Conn.).

[65] Affidavit of Non-Income Status and Notice to the Clerk of Free Access to the Courts, Docket No. 2, at p. 7, *Hilaire v. Nationstar Mortgage LLC,* No. 3:26-cv-15 (VAB) (D. Conn.).

[66] Field Card, *available at* https://gis.vgsi.com/bridgeportct/Parcel.aspx?Pid=31626 (last visited August 23, 2026) [https://perma.cc/B8RZ-8Q78]. The court may take judicial notice of online municipal assessors' records. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (stating that district courts may "take judicial notice of relevant matters of public record"); *Witt v.*

IFP application that he filed in the second of his ten cases, on January 5, 2026;[67] but then he paid the full $405.00 filing fee in his third case just twenty-four days later.[68] He also claims to own no car,[69] but in his complaint he lists "higher down payment requirements for automobile financing" as one of the harms that TransUnion allegedly inflicted upon him.[70]

Finally and more fundamentally, Mr. Hilaire's application makes no sense. No one can live for very long on no income, no assets, and no savings. And when an IFP applicant claims to do just that, courts typically conclude that his application "must be incomplete and, by extension, do[es] not support *in forma pauperis* status."[71] Here, Mr. Hilaire has been claiming to live on no income, no liquid assets, and no more than $150.00 in savings for nearly a year and a half.[72] "The question of whether a plaintiff qualifies for IFP status is one that lies 'within the discretion of the district court,'" and in exercising that discretion, courts are not required to accept such implausible

---

*Stefonski*, No. 3:22-cv-1489 (KAD) (TOF), 2022 WL 22863353, at *2 n.1 (D. Conn. Dec. 28, 2022) (taking judicial notice of municipal assessor's online valuation records), *report and recommendation approved and adopted*, slip op. (D. Conn. Feb. 3, 2023). On April 6, 2026, the date of Mr. Hilaire's IFP motion, the house was owned by the "Hilaire John Living Estate Trust." It was sold to Soundview LLC for $190,000.00 on April 8, 2026, just two days later.

67 Application to Proceed in District Court Without Prepaying Fees or Costs, *Hilaire v. Nationstar Mortgage LLC*, No. 3:26-cv-15 (VAB), Docket No. 2.

68 Notation of Receipt of Filing Fee, *Hilaire v. Nationstar Mortgage LLC*, No. 3:26-cv-149 (VAB) (D. Conn. Jan. 29, 2026).

69 Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 4.

70 Complaint, Docket No. 1, at para. 57.

71 *Jessie C. v. Kijakazi*, No. 3:22-cv-609 (SRU) (TOF), 2022 WL 2068993, at *1 (D. Conn. May 2, 2022); *see also Pierre v. City of Rochester,* No. 16-cv-6428 (CJS), 2018 WL 10072449, at *1 (W.D.N.Y. Dec. 13, 2018).

72 *Compare* Application to Proceed in District Court Without Prepaying Fees or Costs, Docket No. 2, *Hilaire v. Nationstar Mortgage LLC,* No. 3:26-cv-15 (VAB) (D. Conn.) (affidavit dated January 5, 2026 claiming to have earned $0.00 in income from any source in the previous twelve months) *with* Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, *Hilaire v. Navy Federal Credit Union*, No. 3:26-cv-747 (claiming, on May 15, 2026, no income in 2026 other than the $650.00 in "non-employee compensation" disclosed in this case).

claims even where, as here, the plaintiff signed them under penalty of perjury.[73] In this case, it seems much likelier that Mr. Hilaire *has* resources, but has chosen not to disclose them on account of his meritless belief that he is not a "person" and therefore not capable of being an "employee" who earns "income."

I recognize that Mr. Hilaire was granted leave to proceed IFP on an essentially identical application in five other cases.[74] But I respectfully submit that the better course is to deny his motion as it is currently presented, and to advise him that, if he wishes to proceed without paying $405.00 in filing and administrative fees, he must fill out another application with the "particularity, definiteness and certainty" that the law requires.[75] This would entail filing another application, the accuracy of which does not depend on fanciful theories about the definitions of "person," "employee," "income," and so forth. Other IFP plaintiffs with questionable affidavits have been directed to better explain themselves,[76] and Mr. Hilaire should do likewise.

## III. Review of the Complaint Under 28 U.S.C. § 1915

When a plaintiff neither pays the filing fee nor demonstrates that he is unable to do so, some courts dismiss his case for that reason alone—in other words, without proceeding to the

73 *In re Keita*, No. 22-cv-6769 (ENV), 2024 WL 1259352, at *1 (E.D.N.Y. Mar. 19, 2024), *appeal docketed sub nom. Keita v. Ford*, No. 26-1020 (2d Cir. Apr. 20, 2026).

74 *Hilaire v. Nationstar Mortgage LLC*, No. 3:26-cv-15 (VAB) (MEG), slip op. (D. Conn. Apr. 2, 2026), *report and recommendation adopted*, slip op. (D. Conn. May 7, 2026); *Hilaire v. Equifax Information Services,* No. 3:26-cv-519 (VAB) (RAR), slip op. (D. Conn. May 4, 2026); *Hilaire v. Experian Information Solutions, Inc.*, No. 3:26-cv-520 (VAB) (RMS), slip op. (D. Conn. Apr. 22, 2026); *Hilaire v. American Express National Bank*, No. 3:26-cv-650 (VAB) (RAR), slip op. (D. Conn. May 28, 2026); *Hilaire v. JPMorgan Chase Bank, N.A.*, No. 3:26-cv-670 (VAB) (SDV), slip op. (D. Conn. June 17, 2026).

75 *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015).

76 *E.g., Miro v. City of Bridgeport*, No. 3:20-cv-346 (VAB) (TOF), 2020 WL 12893928, at *1 (D. Conn. Mar. 25, 2020) (directing plaintiff to better explain her income), *report and recommendation adopted*, slip op. (D. Conn. Apr. 15, 2020).

second step of the Section 1915 analysis.[77] Other courts have held that it is more efficient to conduct both inquiries at once.[78] Although Mr. Hilaire has not gotten past the first inquiry, I will conduct the second inquiry now. As I did in *Cohen*, I will begin by explaining the applicable legal principles to Mr. Hilaire. I will then apply those principles to his complaint, and I will explain why it fails to state a claim on which relief may be granted.

### A. Applicable Legal Principles

IFP status "comes with a consequence."[79] The same statute that authorizes courts to grant IFP status to qualifying plaintiffs also directs them to review complaints to ensure that those plaintiffs are not abusing that status. Because IFP plaintiffs lack "an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits," the statute instructs courts to review their complaints and dismiss certain types of obviously unmeritorious claims.[80]

Specifically, 28 U.S.C. § 1915(e)(2)(B) instructs federal district courts to dismiss IFP complaints if any of three circumstances apply. First, a district court "shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious."[81] An action is "frivolous" for purposes of Section 1915(e)(2)(B) if it "has no arguable basis in law or fact" or is "based on an indisputably meritless legal theory."[82] Second, the court must dismiss a complaint that "fails to state a claim on which relief may be granted."[83] Third, "the court shall dismiss the

---

77 *E.g.*, *Richardson v. Napoli*, No. 9:09-cv-1440 (TJM) (DEP), 2010 WL 1235383 (N.D.N.Y. Mar. 30, 2010).

78 *E.g.*, *Zografidis v. Richards*, No. 3:22-cv-631 (AVC) (TOF), 2022 WL 21756775, at *1 (D. Conn. July 6, 2022), *report and recommendation adopted,* slip op. (D. Conn. Oct. 7, 2022), *aff'd*, No. 22-3187, 2023 WL 7538211 (2d Cir. Nov. 14, 2023), *cert. denied*, 145 S. Ct. 153 (2024).

79 *Ortiz v. Tinnerello*, No. 3:22-cv-1318 (AWT) (TOF), 2023 WL 11842871, at *1 (D. Conn. Mar. 22, 2023), *report and recommendation accepted*, slip op. (D. Conn. July 26, 2023).

80 *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

81 28 U.S.C. § 1915(e)(2)(B)(i).

82 *Montero v. Travis*, 171 F.3d 757, 759 (2d Cir. 1999) (per curiam).

83 28 U.S.C. § 1915(e)(2)(B)(ii).

case" if it finds that the complaint "seeks monetary relief against a defendant who is immune from such relief."[84]

The second circumstance is most relevant here, so I will discuss it in more detail. To "state a claim on which relief may be granted," the plaintiff's complaint "must include enough factual allegations to add up to a legally meritorious claim, assuming that he could prove them."[85] Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendant fair notice of the claims.[86] Conclusory allegations are insufficient.[87] Put differently, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[88] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[89]

These and other pleading rules are applied liberally in favor of *pro se* plaintiffs like Mr. Hilaire—that is, people who bring lawsuits by themselves, without a lawyer. "Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements," courts must "construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than

84 28 U.S.C. § 1915(e)(2)(B)(iii).

85 *Carrier v. DelGrosso*, No. 3:25-cv-1808 (VAB) (TOF), 2025 WL 3458049, at *3 (D. Conn. Dec. 2, 2025), *report and recommendation adopted*, slip op. (D. Conn. Jan. 6, 2026).

86 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

87 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A 'conclusory' allegation is one that 'expresses a factual inference without stating the underlying facts on which the inference is based.'" *Reid v. Lokay*, No. 3:25-cv-997 (KAD) (TOF), 2025 WL 3521362, at *3 (D. Conn. Dec. 9, 2025), *report and recommendation accepted and adopted*, slip op. (D. Conn. Jan. 5, 2026) (quoting Black's Law Dictionary (8th ed. 2004) at p. 308). For example, "the defendant violated the plaintiff's rights" is a conclusory allegation because it states a legal conclusion—rights were violated—without explaining the facts that support that conclusion, or how those rights were violated.

88 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

89 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citing *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 556 (2007)).

[they] would when reviewing a complaint submitted by counsel."[90] In other words, courts interpret *pro se* complaints "to raise the strongest arguments they suggest."[91]

"Still, even a *pro se* plaintiff must plead a plausible claim."[92] "Although courts still have an obligation to liberally construe a *pro se* complaint, the complaint must include sufficient factual allegations to meet the standard of facial plausibility."[93] And while "courts are obligated to draw the most favorable inferences that a *pro se* plaintiff's complaint supports, they cannot invent factual allegations that he has not pled."[94]

### B. The Fair Credit Reporting Act[95]

In this case, Mr. Hilaire asserts six claims against TransUnion under the FCRA. The first four allege violations of 15 U.S.C. § 1681i, which is entitled "Procedure in case of disputed

---

90 *Lerman v. Board of Elections*, 232 F.3d 135, 139-40 (2d Cir. 2000).

91 *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted).

92 *Reynolds-El v. Strackbein*, No. 3:25-cv-951 (KAD) (TOF), 2025 WL 3470483, at *4 (D. Conn. Dec. 3, 2025), *report and recommendation adopted*, slip op. (D. Conn. Jan. 6, 2026).

93 *Vega v. University of Connecticut Medical Center*, No. 3:11-cv-1864 (AVC), 2012 WL 1825381, at *1 (D. Conn. May 16, 2012) (internal citation omitted); *accord McQuay v. Pelkey*, No. 3:16-cv-436 (MPS), 2017 WL 2174403, at *2 (D. Conn. May 17, 2017).

94 *Braswell v. Pelchat*, No. 3:20-cv-1428 (AVC) (TOF), 2021 WL 11580927, at *2 (D. Con. Feb. 12, 2021), *report and recommendation approved*, slip op. (D. Conn. Apr. 6, 2021) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)) (quotation marks and brackets omitted).

95 Before considering whether a complaint is subject to dismissal for failure to state a claim, the Court must first satisfy itself that it has jurisdiction over the subject matter of the case. *Lawrence v. Charlotte Hungerford Hospital*, No. 3:25-cv-1022 (SVN) (TOF), No. 3:25-cv-1022, 2025 WL 2644744, at *4 (D. Conn. Sept. 15, 2025) (explaining that, "when subject matter jurisdiction and failure to state a claim are both in question, subject matter jurisdiction must be analyzed first").

Although I conclude that Mr. Hilaire's complaint is subject to dismissal for failure to state a claim, I pause to observe that it may present jurisdictional issues as well. As the United States Supreme Court has explained, plaintiffs cannot launch lawsuits against credit reporting agencies solely by alleging that the agencies "failed to use reasonable procedures to ensure the accuracy of their credit files;" plaintiffs must *also* plead and prove "that they suffered a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). When a reporting agency mishandles a consumer's file, but the error causes no concrete harm, the consumer lacks "standing" to sue. And "[w]here a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over

accuracy[,]"[96] and the fifth alleges a violation of 15 U.S.C. § 1681e, "Compliance procedures[.]"[97] The sixth claim for relief asserts violations of 15 U.S.C. § 1681b, "Permissible uses of consumer reports[.]"[98] Mr. Hilaire pled virtually identical claims against another credit reporting agency in another case,[99] and Judge Spector explained why those claims failed.[100] His FCRA claims in this case fail for largely the same reasons, at least as they are currently pled.

The first five claims—that is, the claims under Sections 1681i and -1681e(b)—all "have the same threshold requirement."[101] "A prerequisite for any FCRA claim is that the challenged credit information is incomplete or inaccurate."[102] "[A] credit entry may be 'inaccurate' within

---

such claim." *Zlotnick v. Equifax Information Services, LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022).

In this case, Mr. Hilarie claims to have "suffered injury in fact, including damage to credit reputation and creditworthiness, denial of credit, increased cost of credit, including higher down payment requirements for automobile financing, and other economic and non-economic harm." (Complaint, Docket No. 1 at paras. 38, 47, 57, 67, 76, 86, 97.) He also claims that he will be able to prove $176,000 in damages at trial "for injuries suffered" as a result of the defendant's conduct. (Complaint, Docket No. 1, at p. 12.) But these are merely conclusory allegations, and some courts have found similar allegations to be insufficient to establish standing to sue. *E.g., Zlotnick v. Equifax Information Services, LLC*, 583 F. Supp. 3d 387, 391-92 (E.D.N.Y. 2022) (dismissing FCRA claims because injury was insufficiently pled to establish standing to sue in federal court); *Charles v. Verizon Communications, Inc.*, No. 25-CV-03234 (NRM) (AYS), 2025 WL 3042161, at *2 (E.D.N.Y. Oct. 31, 2025) (same). If Mr. Hilaire opts to file an amended complaint, he will need to lay out in more detail how TransUnion's actions or inactions caused him actual injury.

96 Complaint, Docket No. 1, at paras. 31-67.

97 Complaint, Docket No. 1, at paras. 58-67.

98 Complaint, Docket No. 1, at paras. 68-76.

99 *Compare* Complaint, Docket No. 1, *Hilaire v. Experian Information Solutions, Inc.*, No. 3:26-cv-520 (VAB) (asserting claims for violations of 15 U.S.C. §§ 1681i(a)(1)(A), -1681i(a)(4), -1681i(a)(5), -1681i(a)(6)(B)(iii), -1681e(b), and 1681b) *with* Complaint, Docket No. 1 (same).

100 Recommended Ruling, Docket No. 12, at pp. 7-10, *Hilaire v. Experian Information Solutions, Inc.*, No. 3:26-cv-520 (VAB) (RMS).

101 Recommended Ruling, Docket No. 12, at p. 9, *Hilaire v. Experian Information Solutions, Inc.*, No. 3:26-cv-520 (VAB) (RMS).

102 *Ostreicher v. Chase Bank USA, N.A.*, No. 19-cv-8175 (CS), 2020 WL 6809059, at *3 (S.D.N.Y. Nov. 19, 2020) (citing *Matheson v. Ocwen Federal Bank FSB,* No. 05-cv-2747, 2008 WL 11413560, at *8 (E.D.N.Y. June 18, 2008), *appeal dismissed*, 367 F. App'x 193 (2d Cir. 2010) (summary order)).

the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'"[103] A plausible allegation of inaccuracy is required irrespective of whether the plaintiff seeks to invoke Section 1681i or Section 1681e(b).[104] Requiring the plaintiff to first show an inaccuracy "makes sense," because "if there is no inaccuracy, then the reasonableness of the investigation is not in play."[105]

In this case, Mr. Hilaire has not plausibly alleged facts that, if he were to prove them later in the case, would show that TransUnion's credit report was "patently incorrect" or "misleading[.]" He does not allege, for example, that TransUnion reported that he had taken out credit with a creditor when he had not; that it reported that he had failed to make payments that he had, in fact, made; or any of the other, paradigmatic examples of inaccurate reporting. Rather, his "challenge[ to] the accuracy" of TransUnion's report is essentially a legal argument. He reasons that, because his creditors allegedly never complied with GLBA or obtained his consent under RFPA to report him to credit agencies, any debts he might have otherwise owed them were invalid,[106] and that any

---

103 *Fitzgerald v. Chase Home Finance, LLC*, No. 10-cv-4148, 2011 WL 9195046, at *10 (S.D.N.Y. Feb. 28, 2011) (quoting *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)).

104 *See Cohen v. Equifax Information Services, LLC*, 827 F. App'x 14, 16 (2d Cir. 2020) (summary order) ("[A] plaintiff must demonstrate that her credit report contained inaccurate information in order to prevail on a claim under § 1681e(b) or § 1681i.").

105 *Suluki v. Credit One Bank, N.A.*, 666 F. Supp. 3d 403, 410 (S.D.N.Y. 2023) (quoting *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022)).

106 *See* Exhibit A to Complaint, Docket No. 1-1, at p. 4 (asserting that, because the furnishers did not comply with GLBA, their accounts were "[u]nlawfully furnished[;]" and that, in reporting on such accounts, TransUnion was "in ongoing violation of the FCRA").

credit report that included these accounts was therefore inaccurate.[107] But this is a conclusory allegation at best, and it is insufficient to survive Section 1915 review.[108]

Mr. Hilaire's sixth FCRA claim—that is, his claim under Section 1681b—is likewise subject to dismissal, though for somewhat different reasons. Whereas Sections 1681i and 1681e(b) implicate the procedures that reporting agencies use to prepare credit reports and to respond to disputes about their accuracy, Section 1681b governs the "permissible purposes" or "circumstances" under which a credit reporting agency like TransUnion can "furnish" even an accurate "consumer report" to third parties.[109] But just like any other claim, a claim under Section 1681b must be plausibly pled, and even a *pro se* plaintiff must come forward with "facts suggesting the circumstances . . . under which [the credit reporting agency] actually furnished his report," including "who received the report" and "why they received it."[110] Here, Mr. Hilaire's allegation boils down to a single, conclusory sentence: "Defendant reported and continued to publish the disputed tradelines without maintaining or producing procedures capable of verifying the accuracy and completeness of the information."[111] This is insufficient.

### C. Connecticut Unfair Trade Practices Act

In his seventh claim for relief, Mr. Hilaire asserted a CUTPA claim.[112] He alleged that TransUnion acted deceptively and unfairly when, among other things, it "[r]epresent[ed] that disputed information had been 'verified' without providing or possessing documentation or

---

[107] Complaint, Docket No. 1, at para. 15.

[108] *Cf.* Recommended Ruling, Docket No. 12, at p. 9, *Hilaire v. Experian Information Solutions, Inc.*, No. 3:26-cv-520 (VAB) (RMS).

[109] 15 U.S.C. § 1681b; *see also Rivera v. Experian*, No. 3:22-cv-1039 (MPS), 2026 WL 622608, at *4 (D. Conn. Mar. 5, 2026).

[110] *Rivera v. Experian*, No. 3:22-cv-1039 (MPS), 2026 WL 622608, at *4 (D. Conn. Mar. 5, 2026).

[111] Complaint, Docket No. 1, at para. 72.

[112] Complaint, Docket No. 1, at paras. 87-97.

procedures sufficient to substantiate that representation," "[m]ischaracteriz[ed his] lawful request for verification procedures as a duplicate or insufficient dispute in order to avoid providing required information," and "[e]mploy[ed] automated or conclusory dispute responses that give the appearance of compliance while failing to conduct a meaningful investigation or provide required disclosures."[113]

Mr. Hilaire made substantially the same allegation against Experian.[114] In analyzing whether that CUTPA claim should proceed, Judge Spector applied the liberal construction due to *pro se* pleadings and looked beyond the four corners of the complaint, into the accompanying exhibits.[115] In that case, as in this one, Mr. Hilaire included his dispute letter in his exhibits—and that letter likewise asserted that his creditors had not complied with GLBA or RFPA, and that it was therefore unlawful of Experian to report those creditors' tradelines.[116] Judge Spector concluded that these allegations were sufficient to satisfy the first of the two required elements of a CUTPA claim—that is, that "the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"[117] He then noted, however, that there was no plausible allegation supporting the second element of "an ascertainable loss of money or property[.]"[118] Taking no position on the first prong, I conclude that the second prong is no more plausibly alleged

---

113 Complaint, Docket No. 1, at para. 94.

114 Complaint, Docket No. 1, at para. 73, *Hilaire v. Experian Information Solutions Inc.*, No. 3:26-cv-520 (VAB).

115 Recommended Ruling, Docket No. 12, at pp. 10-13, *Hilaire v. Experian Information Solutions, Inc.*, No. 3:26-cv-520 (VAB) (RMS).

116 Recommended Ruling, Docket No. 12, at p. 10, *Hilaire v. Experian Information Solutions, Inc.*, No. 3:26-cv-520 (VAB) (RMS).

117 Recommended Ruling, Docket No. 12, at pp. 11-12, *Hilaire v. Experian Information Solutions, Inc.*, No. 3:26-cv-520 (VAB) (RMS).

118 Recommended Ruling, Docket No. 12, at p. 11-13, *Hilaire v. Experian Information Solutions, Inc.*, No. 3:26-cv-520 (VAB) (RMS).

here than it was Mr. Hilaire's *Experian* case, and I therefore recommend that the CUTPA claim be dismissed.

## IV. CONCLUSION

In summary, I first recommend that Mr. Hilaire's motion for leave to proceed *in forma pauperis* be denied on the current record for the reasons stated in Section II, without prejudice to a renewed motion supported by a much more complete and careful application. Any such motion must (a) carefully identify *all* of Mr. Hilaire's income and assets, which shall include (but not be limited to) an explanation of the ownership of 85 Victory Avenue and the whereabouts of the proceeds of the April 2026 sale; (b) carefully identify the income and assets of any other person who provides him with support;[119] (c) if his expenses exceed his income, candidly explain how he supports himself; and (d) be signed under penalty of perjury. If he would rather pay the filing fee than file another *in forma pauperis* motion, he may do so.

Next, I recommend that Mr. Hilaire's complaint be dismissed for failure to state a claim, for the reasons stated in Section III. I further recommend, however, that the dismissal be without prejudice. If my recommendation were to be accepted, that would mean that Mr. Hilaire could attempt to cure the defects in his pleading by filing an amended complaint. There may be no cure for these defects, but *pro se* plaintiffs are usually permitted at least one try.[120]

---

119 *See Fridman v. City of New York*, 195 F. Supp. 2d 534, 537 (S.D.N.Y. 2002) ("In assessing an application to proceed in forma pauperis, a court may consider the resources that the applicant has or can get from those who ordinarily provide the applicant with the necessities of life, such as from a spouse, parent, adult sibling or other next friend.") (Internal quotation marks omitted.). As noted in Section II above, Mr. Hilaire says that Nerland Calixte contributed $270.00 toward his $1,575.00 in monthly expenses. (*See* Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 3.) Any renewed application for leave to proceed *in forma pauperis* must therefore include details about Nerland Calixte's financial resources and ability to pay the filing fee.

120 *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

This has been a recommended ruling by a magistrate judge.[121] **<u>If Mr. Hilaire wishes to object to my recommendation, he must file that objection with the Clerk of the Court by September 21, 2026.</u>**[122] If he fails to file a timely objection, his failure "operates as a waiver of any further judicial review[.]"[123] In particular, failure to file a timely objection operates as a waiver of the right to seek appellate review in the Court of Appeals.[124]

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge

121 Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).

122 *See* Fed. R. Civ. P. 72(b)(2) (stating that objections to magistrate judge recommendations shall be filed within fourteen days); D. Conn. L. Civ. R. 72.2(a) (allowing five additional days for persons who, like Mr. Hilaire, will receive the recommendation from the Clerk of the Court via mail); Fed. R. Civ. P. 6(a)(1)(C) (allowing for additional time where the calculated end date would otherwise end on a Saturday, Sunday, or legal holiday—as it does here).

123 *Small v. Secretary of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

124 *Small v. Secretary of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; *Impala v. U.S. Department of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).